# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF IOWA
# CEDAR RAPIDS DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, <br>         Plaintiff, <br> vs. <br><br> GLADYS LOUISE STEPHENSON, <br>         Defendant. | Case No. 24-cr-96-CJW <br><br> **REPORT AND RECOMMENDATION** |

_____

## I.    INTRODUCTION

On October 23, 2024, the Grand Jury returned an Indictment charging Defendant with one count of Theft of Government Property, in violation of 18 U.S.C. Section 641, one count of Supplemental Security Income Benefits Fraud, in violation of 42 U.S.C. Section 1383a(a)(3), and one count of False Statement or Representation, in violation of 18 U.S.C. Section 1001(a).  (Doc. 3.)  The Government characterizes the charge as follows: "Here, defendant is charged with concealing her marriage and the fact that she lived with her spouse from the Social Security Administration."  (Doc. 17 at 3.)

On February 21, 2025, Defendant self-surrendered and appeared for her Initial Appearance in the Northern District of Illinois before the Honorable United States Magistrate Judge Gabriel Fuentes.  At the hearing, Judge Fuentes released Defendant on conditions after considering Pretrial Services' recommendations and the information from the parties.  Judge Fuentes denied the Government's request that he impose supervision by the United States Pretrial Services Office[1] in the Northern District of Illinois where

---

[1] The Northern District of Iowa is served by a combined United States Probation and Pretrial Services Office. The Northern District of Illinois has a separate Pretrial Services Office that was established in 1990. www.ilnpt.uscourts.gov/historical_perspective.pdf

1

Defendant planned to reside. Judge Fuentes imposed the conditions set forth in the Order Setting Conditions of Release and Appearance Bond. (Doc. 6 at 8-13.) On April 1, 2025, the Government filed the transcript from the hearing before Judge Fuentes. (Doc. 22.)

Defendant appeared for her initial appearance and arraignment in this Court on March 4, 2025. (Doc. 9.) The minutes of this hearing show the Government moved to amend the conditions of release to include active supervision and I directed the "parties to file motions regarding Defendant's conditions of release." (*Id.*) No transcript has been provided for this hearing.

Now before the Court is the Government's Motion to Amend Order of Release, filed March 7, 2025. (Doc. 17.) Pursuant to 18 United States Code Section 3145(a)(1), the Government requests the order of release be amended to require that Defendant be supervised while she is on pretrial release. Defendant filed a timely resistance. (Doc. 19.)

The Government's Motion was referred to me by the Honorable C.J. Williams, Chief United States District Court Judge. On March 27, 2025, I held a hearing on the Government's Motion to Amend Order of Release. (Doc. 21.) Defendant appeared by telephone with the Court's permission. Neither party offered any evidence.[2] Only Defendant's counsel chose to make any argument.

For the following reasons, I respectfully recommend that the District Court **deny** the Government's Motion to Amend Order of Release.

---

[2] Prior to the hearing, the Government filed a "Notice of Filing Other Exhibits." (Doc. 18.) The notice purported to certify that "the attached exhibits are the originals offered during the hearing." Because the Exhibits were not actually offered and admitted at the hearing, I will not consider them.

## II. FACTUAL BACKGROUND

A Pretrial Services Report prepared by Pretrial Services in the Northern District of Illinois along with an Addendum from the United States Probation Office for the Northern District of Iowa have been filed at Doc. 8. The Pretrial Services Report indicates that Defendant is 47, unemployed and lists her residence for the past 10 years on Eggleston Avenue in Chicago, Illinois. Defendant reports daily contact with her father in Chicago, as well as frequent contact with her siblings who live in Chicago and Indiana. Because ambiguity regarding Defendant's residence address is at the heart of the dispute, I will quote the Pretrial Services Report about this issue:

> The defendant indicated she has been married to MM for 17 years and they have daily contact. She stated MM lives in a separate residence in Chicago, IL. Ms. Stephenson advised she has daily contact with her five adult children from a prior relationship. She noted three children live in Iowa, one lives in New York, and one is incarcerated. The defendant's father verified her marriage and children but stated the defendant lives with her husband on Kedzie Avenue in Chicago.
>
> Ms. Stephenson conveyed she is a lifetime resident of Chicago aside from living in Cedar Rapids, IA, from 2017-2021 and Moline, IL, from 2021-2023. She reported she has lived at the Eggleston Avenue rental property on and off for the past ten years with her father. The defendant's father verified her residential history but stated Ms. Stephenson only lived with him for a brief period before she moved with her husband to the Kedzie Avenue address a few years ago. Pretrial Services clarified with the defendant, after her release, that she occasionally stays overnight at [an address on] Kedzie Avenue.
>
> The defendant reported, and her father confirmed, she does not have a U.S. passport and has never traveled outside of the United States.

The sole issue before the Court is whether Defendant should be subject to active supervision. United States Probation Officer Tiffany Schuette asked her counterpart in

3

the Northern District of Illinois what type of supervision Defendant would receive and relayed that information to me:

> The Northern District of Illinois advised me that the contact standards for the defendant, at her current risk level, would consist of reporting by phone or their electronic reporting system on a monthly basis. The initial home assessment and any address relocations would be completed virtually. They would also conduct quarterly record checks on the defendant.

I read this information from Officer Schuette's email to me into the record at the March 27, 2025 hearing.

### III. DISCUSSION

#### A. *Proceeding by Report and Recommendation*

Because Defendant was released by a Magistrate Judge in the district where she surrender to the U.S. Marshals and made her first appearance, I must first address the proper procedure under 18 United States Code Section 3145(a)(1). I conclude that it is not my roll to directly review the release order of a fellow Magistrate Judge from another district under the statute. The Tenth Circuit Court of Appeals addressed this issue as follows:

> The text of § 3145(a) supports the conclusion that a motion to revoke a magistrate judge's release order should be ruled on directly by a district judge. We agree with the reasoning of a district court from another circuit that explained:
>
>> It is clear from the wording of Section 3145(a) that "a court having original jurisdiction over the offense" must be interpreted as the district judge assigned to the case … [T]hat section suggests a hierarchy for reviewing a magistrate's decision. In other words, Section 3145(a) authorizes a district judge to review a decision made by a magistrate judge, but it does not confer the same authority upon a magistrate judge in the charging district when the challenged order was issued by a magistrate judge in the arresting district.

4

> *United States v. Johnson*, 858 F.Supp. 119, 122 (N.D.Ind.1994). The hierarchy suggested by § 3145(a) is consistent with the ultimate decision-making power and continuing jurisdiction over the actions of magistrate judges that district court judges possess. *See United States v. First Nat'l Bank of Rush Springs*, 576 F.2d 852, 853 (10th Cir.1978) (per curiam); *United States v. Maull*, 773 F.2d 1479, 1486 (8th Cir.1985) (en banc) (stating, in the context of decision-making under § 3145(a) and (b), that "'the magistrate acts subsidiary to and only in aid of the district court,' and that 'the entire process takes place under the district court's total control and jurisdiction.'") (quoting *United States v. Raddatz*, 447 U.S. 667, 681, 100 S.Ct. 2406, 65 L.Ed.2d 424 (1980))

*United States v. Cisneros*, 328 F.3d 610, 615–16 (10th Cir. 2003). This is not to say, however, that a Magistrate Judge cannot hold a hearing and proceed by Report and Recommendation when this situation arises. Several courts have concluded that Magistrate Judges should proceed by Report and Recommendation under these circumstances. For example, in the Southern District of Georgia, *United States v. Wilson* recently explained,

> "Although the statute is not explicit, and there is surprisingly little case law on this subject (in light of the number of detention hearings held nationwide every year), it is generally assumed that the review under § 3145(a)(1) will be conducted by a district judge." *United States v. Ross*, 2007 WL 1295995, at *1 (W.D. Mich. Apr. 6, 2007). *Ross* further noted that "there appears to be absolutely no reason why the district judge … cannot initially refer the review to a magistrate judge … on a report and recommendation basis. The statute does not prohibit it, and addressing the issue of detention is hardly foreign territory to a magistrate judge since it is one of a magistrate judge's core responsibilities. Moreover, a report and recommendation provides the district judge with the same opportunity to conduct a de novo review that would occur if the district judge handled the review personally in the first instance." *Id*. at *2. Thus, as in *Ross*, the Court concludes that, in this case, "the appropriate way to proceed [is] to render a report and recommendation to the district judge, which will allow a de novo review of the detention issue …." *Id*.

No. CR424-102, 2025 WL 586835, at *1 (S.D. Ga. Feb. 13, 2025), report and recommendation adopted, No. 4:24-CR-102, 2025 WL 588997 (S.D. Ga. Feb. 24, 2025).

As in *Ross* and *Wilson,* I conclude it is appropriate for me to render this report and recommendation. 18 U.S.C. § 3142(b).

### B.   *Magistrate Judge Fuentes's Orders Regarding Release*

Title 18 United States Code Section 3142 provides for the release or detention of a defendant pending trial. Section 3142(b) requires a defendant be released on an unsecured appearance bond with minimal conditions (i.e., not committing crimes and supplying a DNA sample, if required). If, however, the judicial officer determines such conditions are insufficient "reasonably assure the appearance of the person as required and the safety of any other person and the community," then under Section 3142(c)(1)(B) the judicial officer shall order the release "subject to the least restrictive further condition, or combination of conditions, that such judicial officer determines will reasonably assure the appearance of the person as required and the safety of any other person and the community." Subsections 3142(c)(1)(B)(i)-(xiv) then provide the judicial officer with a list of possible conditions that might be employed to ensure the defendant's appearance and the safety of the community.

Judge Fuentes's order following the hearing merely states, "The Court entered the release order for the reasons stated on the record and per the recommendation of Pretrial Services." (Doc. 6 at 4.) The transcript contains the following information relevant to the issue now before the Court:

- The Government stated that Defendant had self-surrendered on the morning of the hearing. (Doc. 22 at 2.)
- The Government asserted Defendant should be released "under certain conditions of supervised release." (*Id.* at 5.)

6

- Defendant's counsel described a proposed release order that had been discussed with the Government and Pretrial Services. According to defense counsel, Pretrial Services had not recommended supervision given Defendant's lack of criminal history and the nature of the offense. Thus, the only disputed issue was supervision. (*Id.* at 9.)
- In response, the Government argued as follows:

    That is a correct representation. The government does believe that some minimal level of supervision is required here, especially given that the charges in the indictment deal with dishonesty toward the government. And especially in light of the fact that this arrest warrant has been out since October. It has taken everyone quite a while to locate the defendant. And we appreciate that she self-surrendered this morning. Nevertheless, I do think that a minimum amount of release conditions, which I'm happy to walk through individually, are appropriate given the nature of the charges and the times from the warrant to the surrender.

    (*Id.* at 9-10.)

- Judge Fuentes engaged in a colloquy with Pretrial Services Officer Judith Lesch. Officer Lesch advised the Court that the purpose of supervision would be to make sure Defendant appears as required. Moreover, Pretrial Services in Illinois would be notified of a failure to appear. Pretrial Services would then notify the Court in Illinois which could order a hearing which is a "pretty common practice." At that point, the Northern District of Illinois Court would be able to increase restrictions or even revoke release.
- Judge Fuentes provided the following explanation of his decision not to impose supervision:

7

> [W]e follow pretrial recommendations about 93 percent of the time. And on something like this where pretrial doesn't feel that that box needs to be checked for its additional supervision, I'm not inclined to require that. But if there is a problem and I find out about it, I probably would check that box. But I also might do a lot more. Because the statute requires me today to release under the least restrictive conditions necessary to reasonably assure your appearance in court and the safety of the community of the least restrictive necessary. I just -- I am not seeing pretrial supervision here as among the conditions necessary to assure those things. But I would not want anything to happen in that regard to change my mind.

- Judge Fuentes then explained the conditions of release and determined that Defendant understood and agreed to them. Judge Fuentes also discussed the consequences of failing to follow the terms of release, including forfeiture of her appearance bond and detention pending trial.

Judge Fuentes comments and his Order Setting Conditions of Release and Additional Conditions of Release suggest that he determined that release upon the minimal conditions of Section 3142(b) was insufficient and that additional conditions were warranted. From the Additional Conditions of Release, it appears Judge Fuentes decided the following conditions found in Section 3142(c)(1)(B) were necessary:

> (iv) abide by specified restrictions on personal associations, place of abode, or travel; . . .
>
> (viii) refrain from possessing a firearm, destructive device, or other dangerous weapon; . . .
>
> (ix) refrain from excessive use of alcohol, or any use of a narcotic drug or other controlled substance, as defined in section 102 of the Controlled Substances Act (21 U.S.C. 802), without a prescription by a licensed medical practitioner; . . .

8

(xi) execute an agreement to forfeit upon failing to appear as required, property of a sufficient unencumbered value, including money, as is reasonably necessary to assure the appearance of the person as required, and shall provide the court with proof of ownership and the value of the property along with information regarding existing encumbrances as the judicial office may require; . . .

(xiv) satisfy any other condition that is reasonably necessary to assure the appearance of the person as required and to assure the safety of any other person and the community.[3]

Thus, the conditions imposed by Judge Fuentes required Defendant to surrender her passport to Pretrial Services, stay in the Northern District of Illinois except to travel to the Northern District of Iowa, not possess firearms, not use controlled substances, report contact with law enforcement, and relinquish her concealed carry license.

Section 3142(c)(1)(B(4)(vi) permits a condition which would make a defendant "report on a regular basis to a designated law enforcement agency, pretrial services agency, or other agency." The form "Additional Conditions of Release" appears to show the condition regarding supervision having been checked and then "removed." (Doc. 6 at 9, ¶ 7(a)). This was the only disputed issue as discussed above. In addition, Judge Fuentes's order states, "The government agreed with defendant on conditions of release after discussion on the record, which included the Court overruling the government's objection to no express pre-trial supervision, per Pretrial Services recommendation." (Doc. 6 at 4.) No written "Pretrial Services recommendation" is part of the record.[4]

---

[3] This catchall provision seems to have been the basis for requiring Defendant to surrender her concealed carry permit.

[4] I suspect the "recommendation" made at the February 21, 2025 initial appearance was oral because the N.D. Illinois Pretrial Services Report is dated after the initial appearance (i.e., February 24, 2025) and states, "Although the defendant presents the above cited risk factors, it appears the combination of conditions as set by Your Honor on February 21, 2025, reasonably assure her presence at future court hearings and the safety of the community. No changes to her current Order Setting Conditions of Release are recommended at this time."

9

The Pretrial Services Report itself contains no additional recommended conditions. Notably, the order does not require Defendant to live at a residence approved by the Pretrial Services which would normally be included with supervision here in the Northern District of Iowa, if it were ordered.

C.  *Rules applicable to review of release orders*

Title 18 United States Code Section 3145(a) states:

a) Review of a release order. If a person is ordered released by a magistrate judge, or by a person other than a judge of a court having original jurisdiction over the offense and other than a Federal appellate court--
(1) the attorney for the Government may file, with the court having original jurisdiction over the offense, a motion for revocation of the order or amendment of the conditions of release; and
(2) the person may file, with the court having original jurisdiction over the offense, a motion for amendment of the conditions of release.

The motion shall be determined promptly.

The Government's motion seeks to amend the release order under Section 3145(a). A district judge reviewing a magistrate judge's pretrial order of release or detention must conduct a de novo review of that order. *See United States v. Maull*, 773 F.2d 1479, 1481 (8th Cir. 1985) (en banc). The Eighth Circuit has discussed at length the application of this standard in review of detention decisions in *United States v. Koenig:*

> As the district court points out, a classical application of the de novo concept would mean that the whole process before the district court would start from scratch, as if the proceedings before the magistrate had never occurred. As the district court recognizes, that is often not what appellate courts mean when they talk of de novo review. *E.g., United States v. McConney*, 728 F.2d 1195, 1204–05 (9th Cir.) (en banc) (court of appeals reviews de novo question of exigent circumstances justifying officers' entry of building), cert. denied, 469 U.S. 824, 105 S.Ct. 101, 83 L.Ed.2d 46 (1984).
>
> It may be too late to restore the original precision to the term "de novo," but we can at least state what we conceive it to mean in the context of a

10

district court's review of a magistrate's detention order. Clearly, the district court is not required to start over in every case, and proceed as if the magistrate's decision and findings did not exist. The district court erred, however, in ruling that it could review the magistrate's findings under a "clearly erroneous" standard of deference. It should review the evidence before the magistrate and make its own independent determination whether the magistrate's findings are correct, with no deference. If the performance of that function makes it necessary or desirable for the district judge to hold additional evidentiary hearings, it may do so, and its power to do so is not limited to occasions when evidence is offered that was not presented to the magistrate. *Delker*, 757 F.2d at 1394–95. The point is that the district court is to make its own "de novo" determination of facts, whether different from or an adoption of the findings of the magistrate. It also follows, as the Harris opinion agrees, that the ultimate determination of the propriety of detention is also to be decided without deference to the magistrate's ultimate conclusion. *See Harris*, 732 F.Supp. at 1032–33; *Motamedi*, 767 F.2d at 1406.

912 F.2d 1190, 1192–93 (9th Cir. 1990).

LCrR 5 sets out certain requirements for the type of review the Government seeks:

**b. Release Orders and Detention Orders Issued in Other Districts.** If a defendant is released or detained by a magistrate judge in another district after appearing in that district on a charge from this district, the 14-day period in section (a) of this rule does not begin to run until the date of the defendant's initial appearance on the charge in this district.

The Government's motion is timely under LCrR 5(b).

### D. The Parties' Arguments

The Government asks the Court to require active supervision of Defendant. The Government did not explain in the Northern District of Illinois and it does not explain here whether its concern relates to a risk of nonappearance, a danger to the community, or some generalized suspicion that Defendant will not comply with the terms of her release. The Government's concern seems to flow from the somewhat convoluted

11

information about Defendant's residence history. The Government characterizes this evidence as follows:

> According to the pretrial services report, defendant has been married to M.M. for seventeen years. (Doc. 8, at 3.) Defendant is unemployed and lives in Chicago. (Doc. 8, at 2.) The pretrial services report initially states that defendant has lived at the listed address in Chicago for the past ten years. (Doc. 8, at 2.) Defendant then reported that she lived in Cedar Rapids, Iowa, from 2017 to 2021, and in Moline, Illinois, from 2021 to 2023. (Doc. 8, at 3.) She maintained that she had lived at the reported address with her father on and off for the past ten years. (Doc. 8, at 3.) However, her father reported that she only lived with him for a brief period of time before she moved with her husband to a different address a few years before. (Doc. 8, at 3.)
>
> . . .
>
> It is still unclear where exactly defendant lives. Defendant reported an address on Eggleston Avenue in Chicago as her residence. (Doc. 8, at 2-3.) However, her father said that she moved from that residence to live with her husband at a residence on Kedzie Avenue a few years ago. (Doc. 8, at 3.)
>
> The Government concludes:
>
> Defendant's offense involves multiple false statements concerning the most basic facts about her life, her marital status and her living arrangements. Even at the time of her appearance on the warrant, she was not truthful with the probation office about her living arrangements. She could not be located for five months after the warrant in this case issued. Defendant has no problem with lying repeatedly to government officials even under penalty of perjury. Based on these facts and circumstances, an active supervision requirement is appropriate and is the minimum level of release that should be imposed.

(Doc. 17 at 2, 4, and 5.)

Defendant argues that Judge Fuentes and the Northern District of Illinois probation office "got it right." (Doc. 19 at 1.) Defendant points out how commonplace it is for

12

defendants to make inconsistent statements to Probation. Defendant contends that the Government's argument suggests that merely because Defendant is alleged to be a fraudster, she cannot be trusted on pretrial release without supervision. Defendant points out that the record contains no factual basis for the assertion that Defendant could not be found for several months. Defendant points to the facts that she self-surrendered to the Marshals and that Defendant has no criminal record.

I have not considered the parties' arguments regarding the content of Government's Exhibits 1 and 2 because they are not in evidence. I also reject the assertion that Defendant could not be located for "five months.[5]" (Doc. 17 at 4.) There is no evidence supporting that contention, except for the mere passage of time. The transcript from the Northern District of Illinois hearing contains no proffer or evidence regarding any efforts made to serve Defendant or notify her of the charges. Neither does it contain any evidence of some difficulty in locating her attributable to any confusion about Defendant's residence address.

*E.    Analysis*

I start with the statutory requirement that the Court must impose the "least restrictive further condition, or combination of conditions" reasonably necessary to assure Defendant's appearance and the safety of a person or the community. 18 U.S.C. § 3142(c)(B). As I pointed out at the hearing, given the very limited nature of the supervision Defendant will receive, the stakes here are not particularly high for either party. Nevertheless, imposing an additional condition of active supervision is a further restriction that should not be imposed unless necessary to assure Defendant's appearance or safety of a person or the community.

---

[5] The indictment was returned on October 23, 2024. Defendant first appeared on February 21, 2025, i.e. 121 days or approximately four months later.

As discussed above, the Government has not stated the purpose for requesting supervision. That is, the Government has not stated whether it believes imposition of supervision will help assure Defendant's appearance or enhance safety. The Government's brief and the transcript from the initial appearance contain no discussion about the risk of nonappearance or danger to any person or the community posed by Defendant's unsupervised release. I could conclude the Government waived these arguments altogether. However, because the Pretrial Services Report lists "conflicting residential history" as the only factor that poses a risk of nonappearance, I will assume this is the Government's concern and address whether supervision is necessary to assure Defendant appears as required.

To reiterate, Defendant's residence history is as follows:

> Ms. Stephenson conveyed she is a lifetime resident of Chicago aside from living in Cedar Rapids, IA, from 2017-2021 and Moline, IL, from 2021-2023. She reported she has lived at the Eggleston Avenue rental property on and off for the past ten years with her father. The defendant's father verified her residential history but stated Ms. Stephenson only lived with him for a brief period before she moved with her husband to the Kedzie Avenue address a few years ago. Pretrial Services clarified with the defendant, after her release, that she occasionally stays overnight at [an address on] Kedzie Avenue.

(Doc. 8 at 3.) Defendant's statements about living in Chicago, Cedar Rapids, and Moline are not inconsistent. She reported that she is a lifelong resident of Chicago *aside from* the time she resided in Cedar Rapids and Moline. Her statement that she lived "on and off for the past ten years with her father" at the Eggleston address in Chicago is also consistent with her reported residence in Cedar Rapids and Moline from 2017 to 2023. Thus, her residence in Cedar Rapids and Moline does not contradict living "on and off" at her father's residence.

Defendant's father "verified her residential history but stated Ms. Stephenson only lived with him for a brief period before she moved with her husband to the Kedzie Avenue address a few years ago." (*Id.*) Defendant's father's statement is consistent with Defendant's general statement that she was a lifelong resident of Chicago except for her time in Cedar Rapids and Moline from 2017-2023.

The discrepancy, if any, lies in whether her current Chicago residence address is on Eggleston or Kedzie. Defendant's father said she had moved to the Kedzie address "a few years ago," but Defendant claims she only stays overnight at the Kedzie house occasionally.

The Grand Jury charged Defendant with social security fraud and making a false statement or representation, both arising from her marital status and living arrangements. The Government would have the Court believe Defendant's father's statements over Defendant's statements. The Government relies almost entirely on the nature of the allegations against Defendant when it argues she misrepresented her living situation to Pretrial Services, "Defendant's offense involves multiple false statements concerning the most basic facts about her life, her marital status and her living arrangements. Even at the time of her appearance on the warrant, she was not truthful with the probation office about her living arrangements." (Doc. 17 at 4.) While the Grand Jury found probable cause to believe Defendant committed the underlying crime, the Government offered no evidence before Judge Fuentes or before me to demonstrate the strength of the evidence. Such evidence would be useful in determining the risk of nonappearance. Here, however, I am unwilling to conclude that because Defendant is accused of fraud and making false statements, her statements to Pretrial Services are untrustworthy.

Another factor is in play regarding Defendant's statements. This case is, in my experience at least, a relatively rare instance where a defendant's statements about the most basic facts necessary for a Pretrial Services Report (i.e., marital status and residence

15

address) may be badly incriminating, although it does arise in immigration cases. While I think United States Probation Officers do an excellent job in explaining the purpose and use of a Pretrial Services Report, I also understand why people at the commencement of a criminal prosecution may be reluctant to share certain details about their lives. For example, a person charged with possession of a firearm as drug user may be justifiably reluctant to discuss his or her substance abuse history. Defendant alludes to a similar quandary she faces, "the Defense is relieved that the Defendant did not utter inculpatory statements to Probation regarding her residential history, and her refusal to inculpate herself should not be held against her." (Doc. 19.)

I largely agree with Defendant about her unwillingness to incriminate herself and will not hold her alleged inconsistent statements against her. Nevertheless, I will consider the fact that her actual place of residence is somewhat ambiguous. The ambiguity here is minimal. Defendant may be living with her husband on Kedzie, with her father on Eggleston, or perhaps going back and forth, but she is not homeless or on the lam. No one has suggested that either of these residences is unsuitable. The minor mystery of whether Defendant sleeps each night on Eggleston Avenue or Kedzie Avenue may be important to the underlying prosecution, but it is not a particularly grave concern in determining whether the conditions imposed are adequate to assure her appearance in court.

It is not difficult to imagine cases where even this degree of ambiguity about a defendant's release plan would give me grave concerns. For example, in cases where location monitoring is ordered or it is necessary to prevent Defendant's contact with a victim, witnesses, or minors, accurate information about the defendant's residence is crucial. But when I consider the other facts presented, any concern about this ambiguity greatly diminishes. Defendant has no criminal history and has never failed to appear. She voluntarily surrendered herself to the USMS and, contrary to the Government's

16

Case 1:24-cr-00096-CJW-MAR    Document 23    Filed 04/03/25    Page 16 of 19

assertion, there is no evidence Defendant could not be located for months. (Doc. 17 at 4.) Defendant appeared in person for her initial appearance and arraignment in the Northern District of Iowa as instructed and called into the hearing on this motion. She has no passport and does not appear to have assets to abscond or any place to abscond to. She is unemployed and is seeking disability while she receives public assistance. The Northern District of Illinois Pretrial Services Report includes a Pretrial Risk Assessment that indicates "a 90% likelihood of overall success, and a 94% likelihood of success when not considering technical violations." (Doc. 8 at 5.) Moreover, there is no evidence about the strength of the evidence against Defendant. Thus, I cannot conclude she is a risk to flee rather than to face the charges.

In addition, in determining whether a supervision requirement is necessary, I note that there are conditions in place to help assure Defendant's appearance. First, Defendant was required to post an unsecured appearance bond in the amount of $10,000, a requirement that goes beyond what this Court would normally impose. (Doc. 6 at 12.) This bond may be forfeited if Defendant fails to appear, surrender to serve a sentence, or fails to follow the conditions of her release. (*Id.*) Defendant is required to surrender her passport, if she has one, stay in the Northern District of Illinois (except to travel to the Northern District of Iowa), and advise the Court or the Pretrial Services office before moving or changing her phone number.

The additional condition the Government seeks would not provide much by way of further assurance of Defendant's appearance. As stated above, given the Defendant's risk level, supervision would consist of: "reporting by phone or their electronic reporting system on a monthly basis. The initial home assessment and any address relocations would be completed virtually. They would also conduct quarterly record checks on the defendant." Because Defendant is already required to report a change of residence, these

17

additional requirements would not afford significant further assurance of Defendant's appearance.

Finally, Judge Fuentes, as a Magistrate Judge in the Northern District of Illinois, is presumably aware of the capabilities of the Pretrial Services Office in his district, as well as the challenges posed to its staffing and resources. Presumably he was also aware of the level of supervision Defendant would receive if he ordered that condition and the value of that condition in assuring Defendant's appearance. As discussed above, this Court's review is de novo. Judge Fuentes's decision to not impose the requested condition is not entitled to any deference. Nevertheless, his decision not to require supervision, especially after hearing the parties' arguments (and the absence of evidence regarding any risk of nonappearance) is at least a factor to consider that weighs in favor of denying the motion. By considering this factor, I do not mean to suggest the Court should defer to Judge Fuente's ultimate conclusion.

Based on my independent review of the record, I recommend that the Court **deny** the Government's motion to impose supervision on Defendant.

### IV. CONCLUSION

For the reasons set forth above, I respectfully recommend the District Court **deny** the Government's Motion to Amend Order of Release. **(Doc. 17.)**

Objections to this Report and Recommendation in accordance with 28 U.S.C. Section 636(b)(l) and Fed. R. Crim. P. 59(b) must be filed within fourteen (14) days of the service of a copy of this Report and Recommendation. Objections must specify the parts of the Report and Recommendation to which objections are made, as well as the parts of the record forming the basis for the objections. *See* Fed. R. Crim. P. 59. Failure to object to the Report and Recommendation waives the right to *de novo* review by the district court of any portion of the Report and Recommendation as well as the right to

appeal from the findings of fact contained therein. *United States v. Wise,* 588 F.3d 531, 537 n.5 (8th Cir. 2009).

      **DONE AND ENTERED** at Cedar Rapids, Iowa, this 3rd day of April, 2025.

_____
Mark A. Roberts, United States Magistrate Judge
Northern District of Iowa